126 Mich. App. 781 (1983)
337 N.W.2d 923
NORTHERN MICHIGAN EDUCATION ASSOCIATION
v.
BOARD OF EDUCATION OF THE CHEYBOYGAN AREA SCHOOLS
Docket No. 63930.
Michigan Court of Appeals.
Decided July 6, 1983.
Foster, Swift, Collins & Coey, P.C. (by Frank J. Nerat, Jr.), for plaintiff.
Thrun, Maatsch & Nordberg, P.C. (by Patrick B. Mooney), for defendant.
Before: DANHOF, C.J., and ALLEN and D.F. WALSH, JJ.
DANHOF, C.J.
Appellant Board of Education of the Cheboygan Area Schools (school board) appeals as of right from an order of acting Cheboygan County Circuit Court Judge John Henry Butts modifying an arbitration award and awarding appellees $17,462.35 plus statutory interest on their breach of contract claim.
On September 1, 1978, appellee Northern Michigan Education Association (NMEA) entered into a collective-bargaining agreement with the school board which required the school board to provide health insurance coverage without cost to NMEA members who were employed by the school board. The agreement provided that the school board was required to provide coverage either with Michigan Blue Cross-Blue Shield or with an insurance program administered by a company affiliated with the Michigan Education Association known as MESSA.
On August 13, 1979, NMEA was notified that, because of increased costs, the school board was discontinuing MESSA coverage effective August *784 31, 1979, and that, thereafter, only Blue Cross-Blue Shield coverage would be provided.
On August 31, 1979, NMEA commenced this action seeking to enjoin the school board from terminating MESSA coverage pending an arbitrator's decision resolving the issue concerning whether the school board had authority under the collective-bargaining agreement to decline to offer NMEA members a choice of either MESSA or Blue Cross-Blue Shield coverage.
At a show cause hearing held on September 17, 1979, the attorney representing the school board indicated that a settlement had been agreed upon pending arbitration and stated the following on the record:
"The Court: Have we resolved something, or you want to see me in chambers?
"Mr. Nordberg: No, I think we have, your Honor. I suggested to Mr. Baird that we would be willing to allow any teacher to come into our office and execute an authorization card authorizing us to deduct from their pay the amount of money  the difference between the Blue Cross/Blue Shield rates and the MESSA rates, and that we would then allow that individual to continue with the MESSA coverage pending the arbitration hearing. And they would pay the additional costs. Now, they could also then, as I understand it, sign up for any of the options that are covered  that are provided under MESSA.

* * *
"Mr. Nordberg: In order to alleviate the concerns that maybe some of our staff have, I think it would be, as far as we are concerned, an equitable procedure that they provide their own moneys during the pendency of this to cover the difference in cost. And if we are wrong, we will pay them back and we will pay them the court interest on it, whatever it is."
Subsequently, the school board's attorney sent a *785 letter to the attorney representing NMEA which provided in part:
"The purpose of this letter is to reiterate to you once again the position which I have taken on behalf of the Cheboygan Area Schools. In the simplest of terms, let me state that any teacher employed by the Cheboygan Area Schools may be covered as of October 1, 1979 by MESSA Super-Med II insurance so long as that individual signs an authorization card authorizing the payroll deduction of the amount of premium difference between the Blus Cross rates and the MESSA rates. If an arbitrator rules that the Union's position is correct, the Board of Education agrees to refund to any teacher the amount of additional premium which they paid from October 1 on as the result of the Board of Education's contract violation. This amount of repayment would include statutory interest. However, I don't expect an arbitrator to rule against the Board's position.
The authorization cards which were signed by a number of NMEA members contain language which was virtually identical to that which was contained in the letter sent by the school board's attorney.
On March 10, 1980, the arbitration proceeding was conducted. In an opinion issued May 28, 1980, the arbitrator indicated that the issue presented for resolution was the following:
"Did the employer violate the collective bargaining agreement when it cancelled all MESSA health insurance coverage for the members of the bargaining unit and required all eligible employees to enroll under Blue Cross coverage?"
The arbitrator resolved that issue in favor of NMEA by finding that the school board did not *786 have the authority pursuant to the collective-bargaining agreement to discontinue the availability of MESSA coverage for the 1979-1980 school year. However, he declined to award damages because:
"It would not be fair to award damages to a teacher previously covered by MESSA for certain areas of non-coverage under Blue Cross-Blue Shield because the same teachers may have also received greater benefits than MESSA would offer in other areas under the Blue Cross-Blue Shield policy. It is simply too difficult to turn back the clock and to reconstruct the effects of changes in comparable insurance coverage for a full year. For this reason the award must only apply to the next school year and there is no award for damages for the 1979-80 school year."
It appears that the arbitrator was acting on the assumption that all NMEA members had been switched to Blue Cross-Blue Shield coverage for the 1979-1980 school year and that it would be too difficult to ascertain the amount of loss they had suffered by such a switch.
Following proceedings which were held on October 16, 1981, Judge Butts ruled that the parties had not agreed to submit the issue of damages to arbitration and that the arbitrator's resolution of that issue exceeded the scope of his jurisdiction. Therefore, he modified the arbitrator's award to delete that part of the decision which dealt with the issue of damages and awarded NMEA the amount which had been withheld, plus interest.
We initially reject the school board's claim that the trial court's findings of fact were inadequate. Upon review of the trial court's opinion, we find that the court's findings were sufficient to indicate the path which was chosen to reach the conclusions of law and that remand for further proceedings is not warranted. GCR 1963, 517.1; Coburn v *787 Public Service Comm, 104 Mich App 322, 325; 304 NW2d 570 (1981).
The School Board claims that the trial court erred in ruling that the parties did not agree to submit the issue of damages to arbitration. It claims that reference to the collective-bargaining agreement demonstrates that that issue was subject to binding arbitration. We disagree.
It is well established that the question of arbitrability of a particular dispute is for the courts. Kaleva-Norman-Dickson School Dist #6 v Kaleva-Norman-Dickson School Teachers' Ass'n, 393 Mich 583, 587; 227 NW2d 500 (1975). Furthermore, it is clear that the issue concerning whether a dispute is subject to arbitration must be decided by reference to the collective-bargaining agreement. See Southeastern Michigan Transportation Authority v Amalgamated Transit Union, Local 1564, AFL-CIO, 116 Mich App 154, 157-158; 321 NW2d 876 (1982). However, it does not follow that the existence of an arbitration agreement with respect to resolution of a particular dispute precludes the parties from settling a portion of the dispute and submitting only those issues to the arbitrator which remain unresolved.
The law favors arbitration because it provides a simpler, less costly form of resolving disputes and avoids protracted litigation. Farr v Michigan Mutual Liability Co, 100 Mich App 190, 193; 298 NW2d 708 (1980). It makes little sense to suggest that parties who have agreed to submit particular types of disputes to arbitration are no longer free to resolve portions of such disputes prior to arbitration by the even less-costly method of dispute resolution of settlement or that they are not bound by settlement agreements so entered. On the contrary, compromises of pending controversies have *788 long been the most favored method of dispute resolution. An agreement or compromise between the parties which is made in open court is thereafter binding on the parties and may not be set aside absent satisfactory evidence of mistake, fraud or unconscionable conduct. Michigan National Bank of Detroit v Patmon, 119 Mich App 772, 778-779; 327 NW2d 355 (1982).
In the present case, neither fraud nor mistake nor unconscionable conduct is alleged. The trial court correctly ruled that, as part of the compromise agreement made in open court, the parties agreed to submit to arbitration only the issue concerning the propriety of the school board's action in unilaterally cancelling the MESSA coverage. The issue concerning the amount of reimbursement if the arbitrator decided the issue of liability in favor of NMEA had already been resolved. Therefore, there was no reason to submit the damages issue to arbitration. The arbitrator exceeded the scope of his jurisdiction by deciding an issue which the parties had not agreed to submit for his resolution. See Waterford Ass'n of Educational Secretaries v Waterford School Dist, 95 Mich App 107, 110-111; 290 NW2d 95 (1980). See also Detroit Automobile Inter-Ins Exchange v Gavin, 416 Mich 407, 440-441; 331 NW2d 418 (1982).
Finally, the school board claims that the circuit court was without authority to enforce only a portion of the arbitrator's decision. It claims that the court was required to confirm the entire decision or vacate it completely. We cannot agree.
The circuit court had the authority to modify the arbitrator's award with respect to issues not submitted to arbitration so long as the award could be corrected without affecting the decision *789 on issues which were properly submitted. Local 214, Law Enforcement Division, Teamsters State, County & Municipal Workers v Genesee County Bd of Comm'rs, 77 Mich App 296, 300, fn 1; 258 NW2d 209 (1977); E E Tripp Excavating Contractor, Inc v Jackson County, 60 Mich App 221, 255-257; 230 NW2d 556 (1975). See also GCR 1963, 769.10.
It is clear that the court was able to modify the arbitrator's decision to omit that portion dealing with damages without affecting the merits of the rest of the decision.
The evidence being sufficient to support the circuit court's finding that the parties did not agree to submit the issue of damages to arbitration, the circuit court's decision is upheld.
Affirmed. Costs to appellees.