1999-NMCA-046

975 P.2d 385

**Joe E. CASIAS and Georgina Casias, Plaintiffs–Appellees,**

v.

**DAIRYLAND INSURANCE COMPANY, Defendant–Appellant.**

No. 18809.

Court of Appeals of New Mexico.

Feb. 9, 1999.

Certiorari Denied, No. 25662, March 24, 1999.

David Graham, Edmund R. Pitts, Law Firm of David Graham, Taos, for Appellees.

Jeffrey E. Jones, Miller, Stratvert & Torgerson, P.A., Santa Fe, for Appellant.

## OPINION

APODACA, Judge.

{1} Defendant Dairyland Insurance Company (Insurer) appeals the trial court's confirmation of an arbitration award pursuant to NMSA 1978, § 44–7–11 (1971) and amended judgment in favor of Plaintiffs Joe E. Casias and Georgina Casias (Insureds) and against Insurer resulting from a personal injury case involving an underinsured driver (the tortfeasor). The parties stipulated to arbitration to determine issues relating to underinsured motorist coverage (UIM) provided by Insurer to Insureds under a contract of insurance. Insurer contends that the trial court erred by not modifying or correcting the award

pursuant to NMSA 1978, § 44–7–13(A) (1971) to include an offset for settlement proceeds already received by Insureds from the tortfeasor's insurer. In support of its contention, Insurer argues that: (1) the arbitrators should not have considered the question of whether Insurer was entitled to an offset for proceeds received from the tortfeasor's insurer, (2) the arbitrators' written award is ambiguous and is therefore imperfect as a matter of form, (3) the trial court's decision to grant Insurer an offset for med-pay benefits but not an offset for proceeds received from the tortfeasor's insurance was internally inconsistent, and (4) the trial court had a duty to consider affidavits proffered by Insurer or to order live testimony in determining whether to correct or modify the award or whether the award was ambiguous.

{2} We hold that the trial court erred in confirming the arbitration award without clarification from the arbitrators whether the offsets were included in their calculations. We therefore reverse the trial court's confirmation of the award as written, vacate the amended judgment, and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{3} Insureds were involved in an automobile accident on July 24, 1994, in which their automobile was struck from behind by another automobile driven by the tortfeasor. Alleging negligence, Insureds filed suit against the tortfeasor for personal injury. The tortfeasor's automobile insurance carried $50,000 per person liability coverage. Insureds' contract of insurance with Insurer included underinsured motorist coverage that, when stacked on each of Insureds' vehicles, totaled $75,000 per person. Because of the extent of the damages claimed by Insureds, they alleged that the tortfeasor was an underinsured motorist and amended their complaint to include Insurer as a defendant. Insureds settled all claims with the tortfeasor's insurance carrier for $50,000 each, the limit of the tortfeasor's insurance policy, and dismissed the tortfeasor from the suit. After a demand for arbitration by Insureds pursuant to an arbitration clause in the contract of insurance

the parties filed an unopposed motion for stay of proceedings. The trial court signed an order staying the proceedings until such time as arbitration, pursuant to the contract of insurance, was completed.

{4} The arbitration hearing was conducted on February 11, 12, and 13, 1997, by a panel of three arbitrators. At the beginning of the hearing, Insureds submitted an arbitration brief to the panel explaining that "it is the function of this arbitration panel to determine the *full amount* of [Insureds'] damages without regard to available insurance coverage under the [Insurer] Policy" and "the total damages [Insureds] are legally entitled to receive from the tortfeasor should be awarded, *without regard or offset for the $50,000 already received.*" The arbitrators were also supplied a form that could have been used to determine total damages. The form did not mention any offset or an award against Insurer.

{5} The arbitrators met and deliberated on February 27, 1997, and issued their written award on April 10, 1997, without using the form provided. The award stated in pertinent part:

1. On the claims of Georgina Casias, a majority of arbitrators award in favor of Georgina Casias *and against Dairyland Insurance* in the amount of seventy three thousand three hundred twenty-eight ($73,328) dollars.

   Dissenting, Mr. Romero would have awarded not less that $75,000. In addition, the arbitrators unanimously award claimant her costs in the amount of $2,681.69.

2. On the claims of Joe E. Casias, the arbitrators unanimously award in favor of Joe E. Casias *and against Dairyland Insurance Company* in the amount of forty-five thousand forty-eight ($45,048) dollars, with each party to bear his own costs.

   The arbitrators unanimously state that each award included more than one thousand dollars for medical expenses.

The arbitrators unanimously state that each award included punitive damages. (Emphasis added.)

{6} On May 8, 1997, Insureds filed a motion to confirm the award requesting that the trial court enter judgment against Insurer in the amount of $45,048 and $73,328 respectively, plus costs of $2681.69. Insurer responded with a motion to confirm the award with appropriate corrections, asking the trial court to subtract the $50,000 already received by each Insured from the tortfeasor's insurer from the award, or in the alternative to correct or modify the award "pursuant to § 44–7–9 or pursuant to § 44–7–13, for the purpose of clarifying the award and making it consistent with the law of this State." At the hearing on the parties' cross motions, Insurer argued that application of the offsets for funds already received from the tortfeasor's insurer were matters not submitted to the arbitrators, and proffered an affidavit from one of the arbitrators that it claimed would place the submission to the arbitrators in the proper context and clear up any ambiguity in the award. The trial court refused to consider the proffered affidavit and told the parties it would try to figure out what to do based on the Arbitration Act, NMSA 1978, §§ 44–7–1 to –22 (1971), and the face of the arbitrators' award. On June 16, 1997, the trial court issued a letter decision denying Insurer's motion to confirm the award with appropriate corrections and confirmed the award as written. Insurer then filed a motion for rehearing and a reply to Insureds' response to that motion attaching the affidavit of another arbitrator whom Insurer contended supported its position. The trial court held a telephonic hearing, again refused to consider any affidavits of the arbitrators, and denied Insurer's motion for rehearing.

## II. DISCUSSION

{7} Our Supreme Court has "repeatedly reaffirmed the strong public policy in this state, expressed in the Arbitration Act [§§ 44–7–1 to –22], in favor of resolution of disputes through arbitration." *Fernandez v. Farmers Ins. Co.*, 115 N.M. 622, 625, 857 P.2d 22, 25 (1993). "In order to promote judicial economy through the use of arbitration, the finality of arbitration awards is enforced by strict limitations on court review of those awards." *Id.* The Arbitration Act controls the scope of the trial court's review of an arbitration award. *See id.* Sections 44–7–12 and 44–7–13 of the Act establish the statutory grounds for vacating, modifying, or correcting an award submitted for review, and are generally limited to allegations of fraud, partiality, misconduct, excess of powers, or technical problems in the execution of the award. *See Fernandez*, 115 N.M. at 625, 857 P.2d at 25. The trial court "does not have the authority to review arbitration awards for errors as to the law or the facts; if the award is fairly and honestly made and if it is within the scope of the submission, the award is a final and conclusive resolution of the parties' dispute." *Id.* at 625–26, 857 P.2d at 25–26.

{8} In evaluating the propriety of an arbitration award, it "is not the function of the court to hear the case de novo and consider the evidence presented to the arbitrators, but rather to conduct an evidentiary hearing and enter findings of fact and conclusions of law upon each issue raised in the application to vacate or modify the award." *Melton v. Lyon*, 108 N.M. 420, 421, 773 P.2d 732, 733 (1989). In reviewing the confirmation of an arbitration award by the trial court, this Court is restricted to a determination of whether substantial evidence in the record supports the trial court's findings of fact and whether the trial court correctly applied the law to the facts when making its conclusions of law. *See Town of Silver City v. Garcia*, 115 N.M. 628, 632, 857 P.2d 28, 32 (1993). Although the Arbitration Act does not require a record of the arbitration proceedings as a prerequisite to an appeal under the Act, "a party who waives a record, of course, may be unable to prove the allegations because of the lack of a transcript." *Malibu Pools of New Mexico, Inc. v. Harvard*, 97 N.M. 106, 107, 637 P.2d 537, 538 (1981). We therefore review the trial court's letter decision to determine whether there is substantial evidence to support the trial court's findings and whether the law was correctly applied to those facts. New Mexi-

co's Arbitration Act is modeled after the Uniform Arbitration Act. In reviewing the trial court's decision, we look to New Mexico law and case law from other jurisdictions and legal authorities construing similar provisions of the act. *See* § 44–7–21 ("The Uniform Arbitration Act [44–7–1 to 44–7–22 NMSA 1978] shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it.").

### The Trial Court Did Not Correctly Apply the Law to the Facts in Determining Insurer's Application to Correct or Modify the Arbitration Award

{9} The only avenue for relief that Insurer has availed itself of is under Section 44–7–13(A). Specifically, the first question for the trial court to determine was whether, under Section 44–7–13(A)(2), any offsets for funds already received by each Insured from the tortfeasor's insurer were within the scope of the submission to the arbitrators for decision. Insurer argues that no legal issues regarding any offsets were submitted to the arbitrators, their only function being to determine total damages that Insureds would be entitled to recover from the tortfeasor, from which the offsets for funds already received by Insureds from the tortfeasor's insurer would then be subtracted. Insureds counter that the arbitrators had within their scope of review all claims made by Insureds against Insurer, and that Insureds' suggestion in their arbitration brief that the arbitrators might want to determine total damages without regard to any offset in no way limited the scope of the matters submitted. Consequently, Insureds argue, the arbitrators had the offsets as a matter before them and could subtract them from the total damages to award against Insurer in calculating the final amount owed by Insurer. There is no disagreement between the parties that each Insured received a $50,000 settlement from the tortfeasor's insurer and that Insurer is entitled to an offset of $50,000 on each Insured. *See Samora v. State Farm Mut. Auto. Ins. Co.*, 119 N.M. 467, 470, 892 P.2d 600, 603 (1995) (holding that contractual offset provision contained in insurance policy was valid and enforceable).

{10} In its letter decision, the trial court referred to the Order of Stay of Proceedings, which stated that the " 'Plaintiffs and [Insurer] desire that this cause of action and all claims necessarily or expressly raised herein against [Insurer] be submitted to Arbitration pursuant to the contract of insurance.' " The trial court then determined that, from a review of the file, it is "apparent that the arbitrators considered the *claims* against [Insurer], and had within their scope of review all claims made by [P]laintiffs against [Insurer]." In so doing, the trial court appears to have interpreted the Order of Stay of Proceedings as determining the scope of the matters presented to the arbitrators, and to have determined that scope to include all claims, including any offsets for the $50,000 already received by each Insured from the tortfeasor's insurer.

{11} Our Supreme Court has decided, however, that the terms of the parties' arbitration agreement set forth the parameters concerning the matters to be arbitrated. *See Pueblo of Laguna v. Cillessen & Son, Inc.*, 101 N.M. 341, 343, 682 P.2d 197, 199 (1984). The terms of the arbitration agreement are to be interpreted by rules of contract law. *See Christmas v. Cimarron Realty Co.*, 98 N.M. 330, 332, 648 P.2d 788, 790 (1982). It is a well-established principle that the courts will not rewrite a contract for the parties. *See id.* It is also established that the "courts will apply the plain meaning of the contract language as written in interpreting terms of a contract." *Id.*

{12} This case is similar to one addressed by the Maryland Court of Special Appeals in *Marsh v. Loffler Housing Corp.*, 102 Md.App. 116, 648 A.2d 1081, 1084 (1994). In *Marsh*, a postaward dispute arose regarding whether arbitrators had the power to arbitrate attorneys' fees even though the matter had already been determined by the parties' contract, and also whether the actual written award included attorneys' fees or not. *See id.* The court in *Marsh* determined that arbitration "is defined as 'the voluntary submission of a dispute to a disinterested person or persons for final determination.' " *Id.* at 1088 (quoting *McKinney Drilling Co. v. Mach I Ltd. Partnership*, 32 Md.App. 205,

359 A.2d 100, 100 (1976)). "The universe of arbitration is therefore defined by those issues that are in dispute." *Marsh,* 648 A.2d at 1088. An issue not in dispute is not arbitrable. *See id.* *Marsh* determined that the issue of attorneys' fees was not in dispute and therefore not arbitrable. *See id.* The court also decided that " 'the function of the arbitrator in these circumstances is purely ministerial.' " *Id.* at 1090 (quoting *Bernard v. Kuhn,* 65 Md.App. 557, 501 A.2d 480, 482 (1986)). Finally, *Marsh* stated that, "[s]hould an arbitrator fail to conform the award to the unambiguous requirements set forth in the arbitration agreement, a court shall modify the award to conform to the contract requirements." *Marsh,* 648 A.2d at 1090.

■ {13} This Court will review the trial court's interpretation of an arbitration agreement de novo. *See Menahga Educ. Ass'n v. Menahga Indep. Sch. Dist. No. 821,* 568 N.W.2d 863, 866 (Minn.Ct.App.1997); *see also Welch v. Buller,* 481 N.W.2d 856, 858 (Minn.Ct.App.1992) (appellate court not bound by the arbitrator's or trial court's conclusion of law). We conclude that the trial court erred in its determination that the scope of matters presented to the arbitrators was all claims determined by the Order of Stay of Proceedings. The scope of the matters presented to an arbitration panel is determined by the parties. In this case, the parties' arbitration clause stated that, "[i]f we and *you,* or *your* legal representative, don't agree on *your* legal right to receive *damages* or the amount of *damages,* then upon the written request of either party, the disagreement will be settled by arbitration." It is clear from the parties' briefs and the record before us, particularly the Insureds' arbitration brief and award form directed to the arbitrators, that the parties instructed the arbitrators only to determine total damages caused by the tortfeasor and that they were only to issue a written award of total damages caused by the tortfeasor without regard to any offset for the $50,000 already received by each Insured. It is also clear from the record and the parties' briefs that the parties had already agreed to the offsets, and consequently they were not arbitrable. At the hearing on the cross motions to confirm the award, Insureds' counsel on two different occasions indicated to the trial court that the parties asked the arbitrators to determine total damages. This fact, coupled with the statements set forth in the Insureds' arbitration brief, convinces us that it was not merely a suggestion that the arbitrators only determine total damages and not include the offsets as argued by Insureds, but that it was the agreement of the parties. Consequently, any calculation or application by the arbitrators of the $50,000 offsets that the parties agreed Insurer was entitled to were outside of the scope of matters submitted.

■ {14} Insureds argue that our Supreme Court's decision in *Fernandez,* requires the trial court to confirm the arbitration award in this case. *Fernandez* is distinguishable. In that case, which is also a case involving uninsured and underinsured motorist coverage, all claims, including the computation of offsets, were submitted to the arbitration panel. *See Fernandez,* 115 N.M. at 624, 857 P.2d at 24. The Supreme Court thus determined that the arbitrators' errors of law or fact in determining their award in that case would not be subject to trial court or appellate review. *See id.* at 625–26, 857 P.2d at 25–26. In the present case, the parties had already agreed that Insurer was entitled to a $50,000 offset per Insured for funds already received from the tortfeasor's insurer. That matter was therefore not arbitrable. The arbitrators may or may not have included the offsets in their award. We determine, however, that application of the offsets was not within the scope of the submission. Errors of law or fact by an arbitration panel that the trial court is not permitted to review under *Fernandez* do not include errors made in considering or deciding matters not submitted or not arbitrable. *See Northern Michigan Educ. Ass'n v. Board of Educ.,* 126 Mich.App. 781, 337 N.W.2d 923, 926 (1983) ("arbitrator exceeded the scope of his jurisdiction by deciding an issue which the parties had not agreed to submit for his resolution" because issue had already been resolved).

{15} Insureds next claim that any change to the award by the court or the arbitrators at this time will affect the merits of the award and is therefore impermissible under any subsection of Section 44–7–13(A). As we noted above, the parties agreed that Insurer was entitled to a $50,000 offset per Insured to be deducted from any award of total damages made by the arbitration panel. That issue was thus not arbitrable. Consequently, the only issue relating to the merits of the arbitrators' decision would be their determination of total damages. Any later subtraction of offsets that Insurer was entitled to by law would not affect the merits of the arbitrators' determination of the issue submitted to them. *See Fort Wayne Educ. Ass'n. Inc. v. Board of Sch. Trustees,* 569 N.E.2d 672, 679 (Ind.Ct.App.1991) (arbitrator determined issues outside scope of authority); *Northern Michigan Educ. Ass'n,* 337 N.W.2d at 926 (trial court had the authority to modify arbitrator's award to omit portion dealing with damages not properly submitted to arbitration).

{16} We also note that the trial court stated in its letter decision that a request for a change of the award by the arbitrators was required to be made within twenty days of the award. The trial court thus apparently implied that the matter could not be resubmitted to the arbitrators because the twenty-day period had already expired. A reading of the plain language of Section 44–7–9 indicates, however, that the twenty-day time limit for application, and ten-day time limit for response to the application, applies only to an application for change or modification of the award made directly to the arbitrators by a party. *See Key v. Chrysler Motors Corp.,* 1996–NMSC–038, 121 N.M. 764, 769, 918 P.2d 350, 355 (rules of statutory construction dictate that when a statute's language is clear and unambiguous, and it conveys a clear and definite meaning, the statute must be given its plain and ordinary meaning). A further reading of Section 44–7–9 indicates to us that it is also the mechanism to be used at any time by the trial court to resubmit an award to the arbitrators for correction or for clarification pursuant to Paragraphs (1) and (3) of Section 44–7–13(A). *See Hilltop Const., Inc. v. Lou*

*Park Apartments,* 324 N.W.2d 236, 240 (Minn.1982) (trial court has the authority to compel arbitrators to clarify their awards under statute (substantially similar to Section 44–7–9)); *cf. McIntosh v. State Farm Fire & Cas. Co.,* 425 Pa.Super. 311, 625 A.2d 63, 65 (1993) (trial court had authority to resubmit arbitration award for clarification absent affirmative action by a party for modification or correction under statute substantially similar to Section 44–7–9).

{17} The trial court was required to correct the award to reflect the $50,000 offsets if it determined that they were not already subtracted, or resubmit the matter to the arbitrators pursuant to Section 44–7–9 for clarification of whether or not the agreed-upon offsets were included in the written award. Since it cannot be determined from the trial record or the face of the award whether the arbitrators actually included the $50,000 offsets in their calculation of damages, the trial court is instructed to resubmit the case to the arbitrators pursuant to Section 44–7–9 for the purpose of clarifying whether the award included the offsets. *See generally,* J.A. Bryant, Jr., Annotation, *Comment Note.—Power of Court to Resubmit Matter to Arbitrators for Correction or Clarification, Because of Ambiguity or Error in, or Omission from, Arbitration Award,* 37 A.L.R.3d 200 (1971). If upon clarification, it is clear that the arbitrators did not include the agreed-upon offsets in their award, the trial court is instructed to subtract the offsets from the judgment as to each Insured. Because we remand the case to the trial court on this issue, it is unnecessary for us to address Insurer's remaining issues and arguments.

## III. CONCLUSION

{18} We conclude that the scope of matters submitted to the arbitrators should be determined by the parties' agreement to arbitrate and not by the order of the trial court staying the proceedings pending arbitration. We also hold that a matter that has already been settled by the parties before arbitration is not arbitrable. We determine that the

record is clear the parties instructed the arbitrators not to consider the offsets.

{19} We therefore reverse the trial court's amended judgment. Because it cannot be determined from the record whether the arbitrators included the $50,000 in their calculation of damages for each Insured, the trial court is instructed to remand this matter to the arbitrators pursuant to Section 44–7–9 for a clarification of whether the offsets were used in calculating the written award. If they were not, the trial court shall deduct the offsets from the judgment. The parties shall bear their respective costs on appeal.

{20} **IT IS SO ORDERED.**

PICKARD, C.J., and DONNELLY, J., concur.