# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:   March 30, 2016

**NO. 34,096**

**BIREN SHAH, M.D.,**

Plaintiff-Appellant,

v.

**RAMAKRISHNA DEVASTHALI, M.D., PUNEET GHEI, M.D., LAS CRUCES IMAGING, LLC, LAS CRUCES RADIOLOGY ASSOCIATES, INC., and DAGS ENTERPRISES, LLC,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Manuel I. Arrieta, District Judge**

Business Law Southwest LLC
Donald F. Kochersberger III
Alicia M. LaPado
Albuquerque, NM

for Appellant

Kemp Smith LLP
CaraLyn Banks
Ken Slavin
Las Cruces, NM

for Appellees

<u>                                        </u>**OPINION**

**BUSTAMANTE, Judge.**

{1}     After an arbitrator awarded Appellant Dr. Biren Shah $1,465,876, Defendants moved for—and were granted—a modification of the award. The district court reduced the award to $150,000. Discerning no basis for the reduction, we reverse the district court's modification and remand for confirmation of the arbitration award.

**BACKGROUND**

{2}     Appellant Dr. Biren Shah (Shah) and Defendants Dr. Ramakrishna Devasthali and Dr. Puneet Ghei are radiologists. In or around 2004, Shah joined the other doctors[1] as an employee, director, and stockholder of Las Cruces Radiology Associates, Inc. (LCRA). LCRA was governed by its bylaws (the Bylaws). Together, Shah, Devasthali, Ghei, and Alvi also formed two limited liability companies, Las Cruces Imaging, LLC (LC Imaging) and DAGS, LLC (DAGS). LC Imaging leased the radiology equipment used by the radiologists and DAGS owned the property in which they operated. LC Imaging and DAGS were governed by separate operating agreements (the Operating Agreements).

_____

[1]A fourth radiologist, Dr. Naveed Alvi, was also a stockholder. Dr. Alvi is not a party to this appeal.

{3}     In 2010 Shah's employment with LCRA was "terminated for cause," which resulted in termination of his stockholder status with LCRA and expulsion as a member from LC Imaging and DAGS. In early 2011 Shah filed a complaint in district court against Defendants for breach of contract, wrongful termination, breach of the duty of good faith and fair dealing, equitable estoppel, and unjust enrichment. He also requested an accounting, dissolution, and declaratory judgment. Defendants filed a motion to dismiss and to compel arbitration pursuant to an arbitration provision included in the Operating Agreements. After a hearing, the district court entered sixty-seven findings of fact and granted the motion to compel arbitration. The findings of fact are discussed in more detail as part of our analysis of the parties' arguments. We refer to this order as the Arbitration Order.

{4}     A five-day arbitration took place before an arbitrator appointed by the American Arbitration Association. Without articulating the basis for his decision, the arbitrator ordered Defendants to pay Shah $1,465,876. After Shah moved to confirm the arbitration award, Defendants filed a motion to modify or correct the arbitration award. The district court granted Defendants' motion to modify the arbitration award on the ground that the arbitrator had exceeded his authority because the award was inconsistent with the parties' agreements. We call this order the Modification Order.

In the Modification Order, the district court reduced the amount of the award from $1,465,876 to $150,000. Shah appeals the Modification Order.

**DISCUSSION**

{5} The question on appeal is whether the district court was correct in its conclusion that "[t]he [a]rbitrator exceeded the scope of his authority when he awarded an amount beyond what was required under the contracts." We conclude that the district court erred in its interpretation of the Bylaws, in its factual findings, and by reconsidering its original findings after arbitration was complete.

{6} We begin by setting out the standard of review of the district court's modification of an arbitration award. Next, we discuss the relevant provisions of the agreements between the parties. Finally, we assess the district court's Modification Order.

**Standard of Review**

{7} Arbitration provisions permit parties to "submit their disputes to an impartial private tribunal for a final and binding decision based upon the parties' presentation of arguments and evidence. This process allows for the informal, speedy, and inexpensive final disposition of disputes, and also aids in relieving the judiciary's heavily burdened caseload[.]" *Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 8, 115 N.M. 622, 857 P.2d 22 (citations omitted). The modification of

arbitration awards by district courts is governed by Section 44-7A-25 of the Uniform Arbitration Act. NMSA 1978, §§ 44-7A-1 to -32 (2001). Section 44-7A-25 provides that

> the court shall modify or correct the award if: (1) there was an evident mathematical miscalculation or an evident mistake in the description of a person, thing or property referred to in the award; (2) the arbitrator has made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted; or (3) the award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted.

{8} This provision sharply limits the district court's discretion to modify an arbitration award. Our Supreme Court has observed that "[t]he [Uniform] Arbitration Act neither empowers the district court to review an arbitration award on the merits of the controversy, nor grants the district court the authority to review an award for errors of law or fact." *In re Arbitration Between Town of Silver City & Silver City Police Officers Ass'n* (*Silver City*), 1993-NMSC-037, ¶ 7, 115 N.M. 628, 857 P.2d 28; *see Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986) ("Because a primary purpose behind arbitration agreements is to avoid the expense and delay of court proceedings, it is well settled that judicial review of an arbitration award is very narrowly limited[.]" (citation omitted)).

{9} In addition, the purposes of the Uniform Arbitration Act depend on finality in arbitration awards. Consequently, "[o]nce an arbitration award is entered, the finality

4

that courts should afford the arbitration process weighs heavily in favor of the award." *State ex rel. Hooten Constr. Co. v. Borsberry Constr. Co.*, 1989-NMSC-007, ¶ 4, 108 N.M. 192, 769 P.2d 726. In the interest of finality, district courts should "exercis[e] great caution when asked to set aside an arbitration award, which is the product of the theoretically informal, speedy and inexpensive process of arbitration, freely chosen by the parties." *Id.* Consistent with these principles, "[i]t is not the function of the court to hear the case de novo and consider the evidence presented to the arbitrators, but rather to conduct an evidentiary hearing and enter findings of fact and conclusions of law upon each issue raised in the application to vacate or modify the award." *Melton v. Lyon*, 1989-NMSC-027, ¶ 7, 108 N.M. 420, 773 P.2d 732; *cf. Silver City*, 1993-NMSC-037, ¶ 7 ("De novo review of the merits of arbitration awards by the district court would only serve to frustrate the purpose of arbitration, which seeks to further judicial economy by providing a quick, informal, and less costly alternative to judicial resolution of disputes.").

{10}      In the context of appeals from orders modifying arbitration awards, our primary task is to determine de novo whether the district court adhered to the structure described above. In addition, on appeal, this Court "determine[s] whether substantial evidence in the record supports the district court's findings of fact, and whether the court correctly applied the law to the facts when making its conclusions of law[.]"

*Silver City*, 1993-NMSC-037, ¶ 8 (citation omitted). To the extent the latter question depends on interpretation of a contract, we review the contract terms de novo. *Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 8, 123 N.M. 526, 943 P.2d 560 ("Since resolution of the issue on appeal depends upon interpretation of documentary evidence, we are in as good a position as the district court to interpret the operating agreement."). "The contract will be considered and construed as a whole, with meaning and significance given to each part in its proper context, so as to ascertain the parties' intentions." *Segura v. Kaiser Steel Corp.*, 1984-NMCA-046, ¶ 12, 102 N.M. 535, 697 P.2d 954.

{11}   In this case, the parties did not provide any testimony or other evidence concerning their individual understanding of the agreements or the course of negotiation, if any, leading to the operative versions of the agreements. Nor do the parties argue that the agreements are ambiguous. Given that the parties have not provided any evidence outside the documents themselves, our task is limited to construing the documents on their face. *Cf. C.R. Anthony Co. v. Loretto Mall Partners*, 1991-NMSC-070, ¶ 15, 112 N.M. 504, 817 P.2d 238 (holding that the court may consider collateral evidence of the circumstances surrounding the execution of agreements in determining whether the language of the agreement is unclear).

**The Bylaws and Operating Agreements**

{12} We turn next to the operative provisions of the corporate Bylaws and the LLC Operating Agreements. The Bylaws provide that "[a]ll stockholders of [LCRA] must be employees of [LCRA]" and that "[i]n the event a [s]tockholder's employment with [LCRA] terminates for any reason, [LCRA] shall purchase the [s]tockholder's share in [LCRA] as set forth herein." Article VI of the Bylaws governs when shares will be transferred and how they will be valued. Consistent with the requirement that all stockholders must be employees, one of these sections addresses purchase of the terminated employee's shares by the other stockholders. In addition to termination of employment, other events—death, divorce, disability, bankruptcy, and "expulsion" of a stockholder—will also act as triggers requiring the transfer of the stockholder's shares.

{13} Two of the triggering provisions are of particular interest here because our analysis depends in large part on which of these two provisions the arbitrator should have or did rely on in making the award. The first is titled "Bankruptcy, Expulsion, [a]nd Unspecified Events [o]f Expulsion[,]" and addresses share transfer when a stockholder is "expelled from [LCRA]." We call this provision "the Expulsion Provision."

{14} The Expulsion Provision states that

> [a]ny [s]tockholder that has been expelled from [LCRA] or who is the holder of an [i]nterest in [LCRA] which has resulted in an unspecified event of expulsion shall convey that [s]tockholder's common stock in [LCRA] to the other [s]tockholders of [LCRA] for the value calculated under Section 10[.]C and Section 11 of this Article.

The corresponding valuation provision, Section 10.C, is titled "Bankruptcy and Undefined Events of Expulsion." It provides that the "[s]tockholder's common stock in [LCRA] shall be purchased by the remaining [s]tockholders for the *lesser of* the following: (1) $50,000[, or] (2) The value of the [s]tockholder's common stock in [LCRA] as determined pursuant to the formula set forth in [the Bylaws.]" (emphasis added). **[RP 148-149, ¶10.]**

{15} The second key provision is titled "Resignation, Retirement, or Termination of Employment" and applies when a stockholder resigns, retires, or is involuntarily terminated from employment. We call this provision "the Termination Provision." The Termination Provision states that "[i]n the event a [s]tockholder resigns, or retires from employment with [LCRA] or the [s]tockholder's employment with [LCRA] is terminated, that [s]tockholder's common stock in [LCRA] shall be purchased by the remaining [s]tockholders . . . in accordance with Section 10 and Section 11 of this Article." Although Section 10.D is not specifically referenced in the Termination Provision, its title, "Resignation, Retirement, or Termination of Employment[,]"

8

mirrors that of the Termination Provision. Section 10.D provides that "[i]n the event a [s]tockholder voluntarily resigns or retires from employment with [LCRA] or the [s]tockholder's employment with [LCRA] is terminated, the value of the [s]tockholder's common stock in [LCRA] shall be determined [according to a formula up to 100% of the value of the stock]."

{16}     We note that, in spite of the significant difference in the valuation of the stock when a stockholder is expelled versus when a stockholder's employment is terminated, the terms "expulsion" and "termination" are not defined in the Bylaws. Nevertheless, there is no indication in the Bylaws that termination of employment and expulsion are indistinct and overlapping acts. In fact, expulsion and termination are addressed in different sections of the Bylaws. We conclude that the concept of termination of employment with LCRA is distinct from that of expulsion. The district court erred to the extent it conflated the two concepts in its reading of the Bylaws.

{17}     Reading the Bylaws as a whole, we conclude that when a stockholder is expelled through "expulsion" or an "undefined event of expulsion," the other stockholders may purchase the expelled stockholder's stock for the lesser of $50,000 or the value of the common stock, but when a stockholder's employment is terminated, the purchase price is not capped at $50,000 and may be up to 100% of the value of the stock.

9

{18} Shah does not challenge the district court's findings of fact that he was expelled from LC Imaging and DAGS as a result of the termination of his employment with LCRA, and that an expelled member's interest in LC Imaging and DAGS is limited to the lesser of $50,000 or the value of the member's capital account. Rather, his argument focuses on the provisions in the Bylaws governing the purchase price for his stock in LCRA as set out above. We include the following description of the provisions in the Operating Agreements merely to provide context for our discussion of the provisions in the Bylaws.

{19} Like the Bylaws, the Operating Agreements have two sets of provisions, the first setting out what happens to the stock when an "event[] of dissolution" occurs, and the second setting out how the stock shall be valued in each of those instances. "Events of dissolution" include

> a [m]ember's i) death; ii) divorce; iii) disability . . . ; iv) bankruptcy; v) retirement; vi) resignation; vii) withdrawal; viii) termination of a [m]ember's [i]nterest [in] Las Cruces Radiological Associates, LLC [sic] . . . ; ix) gift of interest during lifetime; x) *expulsion of a [m]ember*; xi) any other event which would cause the dissolution of [LC Imaging or DAGS] under applicable law.

(Emphasis added.). In the event of expulsion from the limited liability companies, the "[m]ember's interest in the [c]ompany shall be purchased by the remaining [m]embers for the lesser of the following: (1) $50,000[,] (2) The value of the [m]ember's capital

10

account as determined pursuant to the formula set forth in [the Operating Agreement.]"

**Modification of the Arbitration Award**

{20} As a preliminary matter, we briefly address Defendants' argument that the arbitrator exceeded the scope of his authority because "the only issues presented at [a]rbitration were: (1) whether [Shah] could establish his substantive claims against [Defendants]; and (2) if, *and only if*, he established the substantive claim against [Defendants], the amount of damages to be awarded to [Shah]." Defendants maintain that because the arbitrator found no liability on Shah's substantive claims, a damages award was inappropriate. This argument is unavailing for three reasons. First, the issue of the value of Shah's LCRA stock was squarely before the arbitrator regardless of his determination of liability on Shah's tort and breach of contract claims. The district court's Arbitration Order included the following finding.

> Given the structure of the business relationship and the events that trigger expulsion, *unless the value of [Shah's] stock in LCRA . . . is also considered in arbitration, the intent of the [p]arties to have the rights of a [m]ember in the [two limited liability companies] cease and total value of a [m]ember's assets determined, provisions of the Operating Agreements, including the arbitration provisions, would be rendered meaningless and unreasonable.

(Emphasis added.) This finding of fact was requested by Defendants. In addition, and although it was not adopted by the district court, we note that Defendants also

11

requested a finding of fact stating their request "that arbitration be compelled and that the arbitrator make a determination regarding [Shah's] wrongful termination and related claims and *perform an accounting and a determination of the value of [Shah's] assets in LC Imaging, DAGS, and LCRA, Inc.*" (Emphasis added.). In addition to Shah's substantive claim, the arbitrator was clearly tasked with determining the value of Shah's interest in LCRA.

{21}     Second, nothing in the district court's Arbitration Order (or in Defendants' requested findings of fact) supports Defendants' position. The word "damages" does not appear in the Arbitration Order and nothing in the Arbitration Order implies that the arbitrator's determination of the value of Shah's stock depended on the arbitrator's liability findings. Third, there is no indication in the arbitrator's award that the award was based on damages for Shah's tort or breach of contract claims. Defendants' argument is merely speculative as to the arbitrator's basis for the award. Because we determine below that the arbitrator's award was consistent with the Bylaws, we will not guess at other possible bases for the award that have no support in the record.

{22}     We now address the district court's modification of the arbitration award. The district court concluded that the arbitrator exceeded his authority because the award was inconsistent with the Bylaws. This conclusion is based on its implicit finding, in

12

the Modification Order, that Shah had been *expelled* from LCRA. Based on this finding, the district court also found that the governing transfer provision was the Expulsion Provision. The associated valuation provision (Section 10.C) provides that the stock purchase price was the lesser of $50,000 or the stock value. The district court concluded that Shah was entitled to only $50,000 for his stock in LCRA, in addition to $50,000 each for his interest in DAGS and LC Imaging.

{23}    But in the Arbitration Order, which governed the arbitration, the district court found that Shah's employment had been *terminated*. Indeed, the Arbitration Order includes three statements to the effect that Shah's employment with LCRA was terminated, one of which also states that "termination of [Shah's] employment with LCRA, Inc. triggered the termination of his status as a stockholder with LCRA, Inc. and his status as a [m]ember in LC Imaging and DAGS." Several of these findings closely resemble, or are identical to, findings requested by Defendants and are supported by an affidavit by Devasthali stating that Shah's employment with LCRA was terminated. Tellingly, the district court specifically cited to the Termination Provision in its finding that "[o]nce [Shah's] employment with LCRA . . . was terminated and his stock ownership in LCRA . . . ceased, he was contractually bound to have his stock purchased by the remaining stockholders." As noted above, the Termination Provision specifies that the purchase price must be determined pursuant

13

to Section 10, but does not specify which subsection. Section 10.D, which shares the same title as the Termination Provision, does not include the "lesser of" language found in Section 10.C.

{24} Under these circumstances, we discern no basis on which the district court could properly modify the arbitrator's award. First, the Arbitration Order specified that Shah's employment was terminated. Given this finding, the arbitrator could—and apparently did—apply the term of the Bylaws related to employment termination: the Termination Provision. In addition, the arbitrator could reasonably have concluded that Section 10.D, not Section 10.C, governed the valuation of Shah's LCRA stock based on the way the transfer provisions and associated valuation provisions are organized and the similarities in the titles of Section 10.D and the Termination Provision. *Cf. United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960) (stating that "[i]t is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his"). Hence, the arbitrator's award for Shah's LCRA stock pursuant to Section 10.D is consistent with the district court's findings of fact and the terms of the Bylaws specified in the Arbitration Order. We conclude that the district court erred in finding otherwise. *See Major League Baseball*

*Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (stating that "if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks and citation omitted)).

{25} In addition, the district court's finding in the Modification Order that Shah was expelled from LCRA, instead of terminated from his employment as set forth in the Arbitration Order, is not supported by the evidence. *Cf. State ex rel. Goodmans Office Furnishings, Inc. v. Page & Wirtz Constr. Co.*, 1984-NMSC-103, ¶ 7, 102 N.M. 22, 690 P.2d 1016 ("Findings of fact which are supported by substantial evidence will not be disturbed on appeal."). Devasthali's affidavit states that "Shah's employment with [LCRA] was terminated." There is no similar evidence in the record supporting the district court's finding that the removal of Shah from LCRA was an "expulsion" instead of a termination of employment within the terms of the Bylaws. To the extent Defendants rely on a joint pre-hearing statement submitted to the arbitrator stating that Shah was expelled "as a [s]tockholder/[m]ember," we are not convinced by this statement because it post-dates and contradicts the district court's original factual findings in the Arbitration Order.

{26} Finally, the district court erred in revisiting the findings in the Arbitration Order. In essence, Defendants argued in the district court that Shah's employment

15

was terminated and requested findings to that effect. The district court adopted those findings and ordered arbitration consistent with those findings. Once the arbitrator entered his award in favor of Shah based on those findings, Defendants argued that the district court's original findings—the ones Defendants originally requested and to which they never objected—were incorrect and requested different findings. Defendants' efforts to circumvent the arbitration award are untenable. One of the purposes of arbitration "is to reduce caseloads in the courts." *United Tech. & Res., Inc. v. Dar Al Islam*, 1993-NMSC-005, ¶ 11, 115 N.M. 1, 846 P.2d 307. As this case demonstrates, permitting Defendants to argue for a different factual finding post-arbitration improperly gave them an opportunity to relitigate the arbitrator's original task. *See id.* ¶ 23 ("Having bitten once at the arbitration apple, [a party] cannot [then] take a second bite from the judicial one."). Moreover, even if the district court, in hindsight, felt that either its original findings or the arbitrator's award were in error, it did not have the authority to modify them under the circumstances here because "[district courts] do[] not have the authority to review arbitration awards for errors as to the law or the facts; if the award is fairly and honestly made and if it is within the scope of the submission, the award is a final and conclusive resolution of the parties' dispute." *Casias v. Dairyland Ins. Co.*, 1999-NMCA-046, ¶ 7, 126 N.M. 772, 975 P.2d 385 (internal quotation marks and citation omitted).

16

# CONCLUSION

{27}    An arbitration award may be modified by the district court only in limited circumstances. Since we conclude that those circumstances do not exist here, we reverse the district court's modification of the award and remand for confirmation of the arbitrator's award.

{28}    **IT IS SO ORDERED.**


                                    _____
                                    **MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**


_____
**TIMOTHY L. GARCIA, Judge**



_____
**J. MILES HANISEE, Judge**

17