## A00A0621. FAIYAZ et al. v. DICUS et al.
(537 SE2d 203)

PHIPPS, Judge.

The underlying appeal involves a challenge to the trial court's denial of a motion to vacate an arbitration award. Because the arbitrator validly exercised his authority in rendering the award and no basis for vacating the award has been demonstrated, the trial court's order is affirmed.

On March 11, 1996, Mohammad Faiyaz and Medina Enterprises, Inc. (collectively "Faiyaz") entered into a purchase and sale agreement with Frank Dicus and Dicus Enterprises, Inc. (collectively "Dicus") for Faiyaz to buy the Elegant Touch Dry Cleaners for $380,000.[1] Faiyaz paid $100,000 and became obligated to pay $280,000 to Dicus under three promissory notes of varying duration and amount. As collateral for the promissory notes, Dicus obtained a security interest in the assets of the dry cleaning business.

Faiyaz paid a portion owed on one promissory note but failed to pay the accrued interest on that note or to make any other required payment. Dicus then accelerated the balance, declared default, and sought arbitration under a provision of the purchase and sale agreement.

Arbitration commenced on December 15, 1997, and concluded on January 15, 1998. The arbitration award contains highly detailed factual findings. The arbitrator determined that Faiyaz "had the ability to pay the $100,000.00 payment by May 1, 1997 but refused to do

---

[1] The arbitrator noted that Mohammad Faiyaz and his wife, Suraiya Mateen, were the corporate officers of Medina Enterprises, Inc.

so." The arbitrator found that Faiyaz was properly notified of the default but did not timely cure it, so that the entire principal sum and accrued interest under each note became due and payable in July 1997. The arbitrator also decided that Faiyaz had no valid defense for withholding payment under the notes. Finding that "Mohammad Faiyaz, who admitted under oath to giving false testimony, perjured himself," the arbitrator noted that his testimony "was not credible." The arbitrator also entered a finding that "Mohammad Faiyaz and Suraiya Mateen falsified evidence." The deception involved futile efforts by Faiyaz to establish $198,000 in alleged losses attributable to certain dry cleaning discount coupons purportedly issued by Dicus.[2] The arbitrator found:

> From reviewing the handwriting, the contracts and the testimony of Mohammad Faiyaz, it appears by the preponderance of the evidence that Mohammad Faiyaz and Suraiya Mateen individually or through others at their control forged customer names on the discount cards to make the cards appear that they were redeemed by customers. The Arbitrator specifically finds that Mohammad Faiyaz and Suraiya Mateen have knowingly manufactured evidence and falsely testified concerning their defenses and have attempted to defraud the Court and the Arbitrator through same.

The arbitrator determined that the Defendants "fraudulently and intentionally breached their agreement with Plaintiffs and that Defendants willfully, wantonly and maliciously failed to perform under the agreement." Based on a finding of fraud, the arbitrator awarded punitive damages. The total award included principal and interest of $290,497.42; attorney fees of $43,574.61; costs of $2,019.62; punitive damages of $100,000; nominal damages of $2,500; and the cost of arbitration.

1. Faiyaz contends that the trial court erred in confirming the arbitration award and entering judgment thereon because Dicus prepared and used a materially false affidavit to procure the award and Faiyaz was thus prejudiced by Dicus's corruption, fraud, and misconduct.

---

[2] During the January 15, 1998 proceeding, a tape recording of Mohammad Faiyaz's testimony was made. A transcript of that testimony confirms that he admitted having testified falsely about the discount coupons and another matter. When confronted with evidence of his contract with a local printer dated December 12, 1997, for the coupons to be printed, he then admitted having procured 4,000 coupons and paying cash for them on December 15. Some of these fake coupons were apparently backdated to make it look as though Dicus had issued them.

The power of a court to vacate an arbitration award has been severely restricted so as not to frustrate the legislative purpose of avoiding litigation and encouraging arbitration.[3] OCGA § 9-9-13 (b) sets forth the exclusive grounds upon which an arbitration award may be vacated.[4] Unless one of the four statutory grounds for vacating or modifying an award is established and prejudice is shown, the Georgia Arbitration Code requires that a trial court confirm an award upon timely application by a party.[5]

Relying on OCGA § 9-9-13 (b) (1), Faiyaz claims its rights were prejudiced because Dicus engaged in corruption, fraud, and misconduct in procuring the award. Faiyaz asserts that Dicus offered into evidence an affidavit from Mohammad Khan, the printer of the coupons, despite knowing that Khan's affidavit contained materially false statements. Faiyaz asserts that the date on which the discount coupons were picked up is critical and that Khan testified to an incorrect date. The record belies this assertion.

At the January hearing, when confronted with Khan's affidavit and a copy of an invoice, Mohammad Faiyaz vouched for the truthfulness of Khan's affidavit. He admitted placing the printing order on December 12, 1997, and receiving the order three days later. The fact that Khan testified that the order had been picked up "on approximately December 13 or 14, 1997" is immaterial since it is undisputed that these coupons were offered in evidence by Faiyaz during the December 15 hearing.

2. Faiyaz asserts that the arbitrator exceeded or overstepped his authority by awarding punitive damages, an issue not submitted to him by the parties.[6] Faiyaz also claims that the arbitrator exceeded his authority by awarding nominal damages when actual damages were sought and obtained.

As to nominal damages, we find no error. The scope of the arbitration agreement encompassed "[a]ny controversy or claim arising out of or relating to this AGREEMENT, or the breach thereof." Having examined the face of the award and since we cannot say that an award of nominal damages appears duplicative, no ground for reversal has been shown.[7] Moreover, the arbitration code specifically provides: "[t]he fact that the relief was such that it *could not* or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."[8]

---

[3] *Ralston v. City of Dahlonega*, 236 Ga. App. 386 (1) (512 SE2d 300) (1999).

[4] *Greene v. Hundley*, 266 Ga. 592, 595-596 (3) (468 SE2d 350) (1996).

[5] *Haddon v. Shaheen & Co.*, 231 Ga. App. 596, 597 (1) (499 SE2d 693) (1998); see *Gilbert v. Montlick*, 232 Ga. App. 91, 93 (1) (499 SE2d 731) (1998).

[6] OCGA § 9-9-13 (b) (3).

[7] *Banderas v. Doman*, 224 Ga. App. 198, 200 (3) (480 SE2d 252) (1997).

[8] (Emphasis supplied.) OCGA § 9-9-13 (d).

Although Faiyaz contends that the arbitrator exceeded his authority by awarding punitive damages, Faiyaz failed to support this assertion with citations to the record or by reference to the parties' written submissions of the issues and remedies to be arbitrated or by reference to any underlying litigation.[9] The contract, moreover, provided that "[a]ll matters affecting the interpretation of this AGREEMENT shall be governed by and construed according to the laws of the State of Georgia." Punitive damages under OCGA § 51-12-5.1 may be obtained when tortious conduct displays wilful misconduct, malice, fraud, or wantonness as proven by clear and convincing evidence.[10]

Here, the arbitrator determined "that Defendants' actions factually support the tort of fraud and that an award of punitive damages is warranted to punish Defendants and to deter them from engaging in such fraudulent conduct in the future." Although the precise nature of this finding of fraud was not specified in the award, it apparently relates to a conveyance entered into by Faiyaz.

The security agreement gave Dicus a secured interest in the business assets and required Faiyaz to keep the collateral in good condition, excepting normal wear and tear, and to maintain insurance on it. The security agreement expressly prohibited the sale, transfer, or disposal of the collateral without the prior written consent of Dicus. Despite these explicit terms, as was determined by the arbitrator, Faiyaz sold Elegant Touch Dry Cleaners without Dicus's knowledge or consent to Iftikhar Khan on December 9, 1996, then later repossessed it from Khan. Because Faiyaz was already in default on the promissory notes at the time of this unauthorized transaction, the arbitrator apparently decided that Faiyaz engaged in a fraudulent transfer of the business.[11] Since punitive damages are obtainable when real and personal property are conveyed with an intent to delay, hinder, or defraud creditors, we cannot say that the trial court clearly erred in affirming the award of punitive damages in this situation.[12]

3. Faiyaz claims that the arbitrator was not neutral as required by OCGA § 9-9-13 (b) (2). Faiyaz contends that the issuance of unfavorable findings about perjury and the manufacture of evidence and the award of punitive and nominal damages demonstrate that the arbitrator was partial and not neutral.

Merely pointing to adverse factual and legal findings cannot sus-

---

[9] No transcript of the arbitration proceedings was included in the appellate record. Dicus did not file a civil action for damages.

[10] *Shaw v. Ruiz*, 207 Ga. App. 299, 305 (13) (428 SE2d 98) (1993).

[11] See OCGA §§ 18-2-21; 18-2-22; see also OCGA §§ 44-14-6; 44-14-8; 44-14-12.

[12] *Kesler v. Veal*, 257 Ga. 677, 678 (362 SE2d 214) (1987).

tain an allegation of bias within the meaning of subsection (b) (2). Faiyaz failed to offer a shred of evidence of bias on the part of the arbitrator. Having examined the arbitration award, we conclude that nothing on its face evinces any partiality or bias on the part of the arbitrator.[13]

4. Faiyaz contends that the trial court erred in confirming the award and entering judgment thereon because the arbitrator did not deliver the award in the manner required by OCGA § 9-9-10 (a). Faiyaz asserts that the arbitrator merely faxed a copy of the award to its counsel and failed to deliver a copy as required by statute. Faiyaz argues that since the award was never delivered, it could not be confirmed within the meaning of OCGA §§ 9-9-13 (a) and 9-9-14 (a).[14] We disagree.

OCGA § 9-9-10 (a) authorizes personal delivery of an award or delivery by registered or certified mail "or as provided in the agreement." Here, in their contract, the parties agreed to be bound in arbitration by the Commercial Rules of the American Arbitration Association. Rule 47 currently provides:

> Parties shall accept as notice and delivery of the award the placing of the award or true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

In Faiyaz's pleading filed February 11, 1998, and styled "DEFENDANTS' OBJECTION TO PRESENT CONFIRMATION OF ARBITRATION AWARD," Faiyaz noted its earlier filing on February 6, 1998, of an Application for Change in Award and Motion to Amend and Supplement Findings of Fact and Conclusions of Law. Neither of these pleadings mentions a problem with proper delivery. Similarly, Faiyaz's appeal in superior court which sought to vacate the trial court's confirmation makes no mention of this alleged defect. Without question, Faiyaz must have had a copy of the award in order to have contested it with such specificity.[15] Thus, even assuming, arguendo, that Faiyaz could prove a procedural defect in the delivery and further assuming the issue was not waived, Faiyaz did not satisfy the

---

[13] *Gilbert*, supra, 232 Ga. App. at 93 (2).

[14] Dicus disputed this allegation and offered the affidavit of a member of the arbitration firm who testified that it was standard policy to fax a copy, then to subsequently mail copies to the parties and their counsel.

[15] *Race, Inc. v. Shell*, 212 Ga. App. 587, 588 (442 SE2d 767) (1994) (absent showing of prejudice, award must be affirmed).

requirement of a showing of prejudice needed for reversal.[16]

5. Faiyaz contends that the trial court erred in confirming the award and entering judgment thereon because prior to the entry of judgment, Dicus seized the collateral and sold it under the Uniform Commercial Code.

After arbitration, Faiyaz notified Dicus of an intent to shut down the business and a plan to dispose of the assets to an undisclosed buyer. In response, Dicus obtained a writ of immediate possession and sold the collateral pursuant to the security agreement. Faiyaz now claims that the foreclosure sale was not "commercially reasonable" within the meaning of OCGA § 11-9-504 (3).[17] Because this argument plainly does not fall within the parameters of one of the four statutory grounds, we cannot consider it.[18]

*Judgment affirmed. Johnson, C. J., and Mikell, J., concur.*

DECIDED JULY 12, 2000.

*Parkerson, Shelfer, Groff & McDonnell, Robert H. McDonnell*, for appellants.

*Weinstock & Scavo, Michael Weinstock, Richard J. Capriola, Elizabeth M. Jaffe*, for appellees.

---

[16] Id.; see *Stringer v. Harkleroad & Hermance*, 218 Ga. App. 701, 704 (1) (463 SE2d 152) (1995).

[17] See *Hubbard v. Farmers Bank*, 155 Ga. App. 720 (272 SE2d 510) (1980) (price obtained at foreclosure sale of collateral generally not sufficient to establish commercial reasonableness of sale, since such sales are "forced sales and notoriously fail to bring the true market price").

[18] *Akintobi v. Phoenix Fire Restoration Co.*, 236 Ga. App. 760, 761 (513 SE2d 507) (1999).