2001–NMCA–091

34 P.3d 617

Rosalina AGUILERA, Petitioner/Claimant–Appellee,

v.

PALM HARBOR HOMES, INC., d/b/a Masterpiece Housing, Newco Homes, L.P., d/b/a Palm Harbor Village, Newco Homes, d/b/a C & S Magnahomes, Palm Harbor Homes, L.P., Masterpiece Housing, and Newco Homes, Respondents–Appellants.

Nos. 20,665, 21,155.

Court of Appeals of New Mexico.

Aug. 30, 2001.

Certiorari Granted, No. 27,144, Oct. 30, 2001.

J.C. Robinson, H.R. Quintero, Robinson, Quintero & Lopez, P.C., Silver City, NM, for Appellee.

Thomas L. Murphy, The Murphy Law Firm, LLC, Albuquerque, NM, for Appellants.

## OPINION

ARMIJO, Judge.

{1} These consolidated appeals present us with the opportunity to examine the arbitration process in the context of the increasing demand for and dependence on methods of alternative dispute resolution. Specifically, we address the extent of an arbitrator's authority under the Arbitration Act, NMSA 1978, §§ 44–7–1 to –22 (1971).[1] Respondents, Palm Harbor Homes, Inc., et al., appeal from both the district court judgment confirming an arbitration award that awarded punitive damages to the claimant and the order awarding Petitioner, Rosalina Aguilera, additional attorney's fees. We affirm the district court's confirmation of the arbitration award and remand the order awarding additional attorney's fees to be vacated by the district court.

## BACKGROUND AND FACTS

{2} Shortly after the death of her husband, Aguilera bought a mobile home from Palm Harbor Homes, Inc., et al. (Palm Harbor) in March 1997. As a condition of this purchase, Aguilera signed an arbitration provision, under which she agreed to settle any claims relating to the purchase "solely by means of final and binding arbitration before the American Arbitration Association (AAA) in accordance with the rules and procedures of the AAA." Following a protracted dispute over this purchase, the parties eventually stipulated to a court order requiring them to resolve their differences through arbitration, pursuant to the rules of the AAA. At the end of the arbitration, which was held on February 22–23, 1999, the Commercial Arbitration Tribunal (Tribunal) (composed of former District Judge Rebecca Sitterley, the neutral arbitrator, former Justice Dan Sosa, designated by Aguilera, and Matthew P. Holt, Esq., designated by Palm Harbor) announced its decision. The Tribunal found that Aguilera had revoked acceptance of the mobile home and was entitled to a refund of the purchase price of the home plus interest. The Tribunal also ruled that Palm Harbor was to remove the mobile home from Aguilera's property, or it would be deemed abandoned. Aguilera was awarded compensatory damages for emotional distress and for out-of-pocket expenses. The Tribunal also awarded punitive damages of $100,000 and found that Aguilera was entitled to her reasonable attorney's fees and costs under the Manufactured Housing Act, the precise amount of which would be decided after Aguilera's attorneys submitted a bill of costs and affidavits supporting a request for attorney's fees. The Tribunal determined that Aguilera's son had not proven a claim against Palm Harbor and was not entitled to damages. The award stated that the decision of

---

1. During the 2001 legislative session, our legislature repealed the version of the Arbitration Act applied by us today and substituted in its place a version that specifically authorizes an arbitrator to award punitive damages or other exemplary relief "if such an award is authorized by law in a civil action involving the same claim and the evidence produced at the hearing justifies the award under the legal standards otherwise applicable to the claim." H.B. 768 (effective July 1, 2001). While the amended statute is not controlling in this case, it provides guidance regarding our state's public policy.

the arbitrators was unanimous, "with the exception of the amount of punitive damages, to which Matthew P. Holt, Esq., dissents."

{3} Aguilera filed the arbitration award with the district court on March 16, 1999. Shortly afterwards, Aguilera and her son filed an application with the district court regarding the arbitration award. Palm Harbor then filed a motion with the district court for appellate review of the award. Aguilera's application sought additional compensatory damages for out-of-pocket expenses and emotional distress, additional punitive damages, and an award of damages for her son. Palm Harbor's motion sought to vacate the awards of emotional distress damages and punitive damages, arguing that there was no basis for emotional distress damages and that, under New Mexico law, arbitrators were not authorized to award punitive damages. The district court entered an order on March 24, 1999, in which it found the parties were in agreement regarding the contract damages and the award of attorney's fees and costs, although the amounts of fees and costs were still to be determined.

{4} The court held a hearing on April 30, 1999 on the remaining disputed issues. On May 27, 1999, the court entered a judgment and order in which it found that (1) there was no indication that either party objected to the Tribunal's consideration of punitive damages; and (2) the award of punitive damages would be treated as advisory and adopted by the court. The court confirmed the award of attorney's fees awarded by the Tribunal. Aguilera then moved for additional attorney's fees for proceedings before the district court, which the court awarded under the Unfair Practices Act (UPA). Palm Harbor filed two separate appeals, one challenging the authority of the Tribunal to award punitive damages and the other challenging the additional award of attorney's fees. We consolidated these appeals.

## DISCUSSION

{5} Palm Harbor appeals the award of punitive damages and the award of additional attorney's fees. Palm Harbor raises four issues in connection with punitive damages: (1) the district court erred in confirming the award when the Tribunal had no authority to award punitive damages; (2) the district court's finding that the Tribunal made a recommendation of punitive damages rather than an award is not supported by substantial evidence; (3) the district court erred in failing to find that Aguilera was barred from recovering punitive damages because she had agreed to arbitrate all claims and punitive damages could not be awarded by arbitrators; and (4) the district court erred in awarding punitive damages because Aguilera failed to invoke the jurisdiction of the trial court to make an award. In connection with the additional award of attorney's fees under the UPA, Palm Harbor raises four issues: (1) the district court lacked jurisdiction to award additional attorney's fees after the entry of a judgment on attorney's fees; (2) the recovery of attorney's fees was substantive and within the jurisdiction of the Tribunal; (3) Aguilera is judicially estopped from claiming additional attorney's fees, having previously conceded that the district court lacked jurisdiction to make such an award; and (4) no statute, rule, or agreement permits recovery of attorney's fees in post-arbitration proceedings in the district court and the Arbitration Act does not empower the district court to make an award of attorney's fees. We first address the punitive damages issue and second address the award of attorney's fees.

### I. *Punitive Damages*

{6} As this Court stated in *Casias v. Dairyland Ins. Co.*, 1999–NMCA–046, ¶ 7, 126 N.M. 772, 975 P.2d 385 (quoting *Fernandez v. Farmers Ins. Co.*, 115 N.M. 622, 625, 857 P.2d 22, 25 (1993)), "[o]ur Supreme Court has 'repeatedly reaffirmed the strong public policy in this state, expressed in the Arbitration Act [§§ 44–7–1 to –22], in favor of resolution of disputes through arbitration.'" Consistent with this policy, under Sections 44–7–12 and 44–7–13, "[i]n reviewing the confirmation of an arbitration award by the trial court, this Court is restricted to a determination of whether substantial evidence in the record supports the trial court's findings of fact and whether the trial court correctly applied the law to the facts when making its

conclusions of law." *Casias*, 1999–NMCA–046, ¶ 8, 126 N.M. 772, 975 P.2d 385 (citing *Town of Silver City v. Garcia*, 115 N.M. 628, 632, 857 P.2d 28, 32 (1993)).

{7} Because New Mexico encourages resolving disputes through arbitration, the district court's fact finding is limited to the issues raised in the application to vacate or modify the award and is not a de novo review of the evidence before the arbitrators. *Melton v. Lyon*, 108 N.M. 420, 421, 773 P.2d 732, 733 (1989). In *Casias*, this Court emphasized that "[t]he Arbitration Act controls the scope of the trial court's review of an arbitration award." *Casias*, 1999 NMCA 046, ¶ 7, 126 N.M. 772, 975 P.2d 385. Thus, under Sections 44–7–12 and 44–7–13, the authority of the district court to vacate, modify, or correct an award is "generally limited to allegations of fraud, partiality, misconduct, excess of powers, or technical problems in the execution of the award." *Id.*

{8} In this case, the trial court found that Palm Harbor had not alerted the Tribunal to the issue of its lack of authority to award punitive damages and that it would consider the award to be advisory and would adopt it. Palm Harbor argues, however, that the trial court's finding that the award was advisory was not supported by substantial evidence and that the district court should not have confirmed the award because the arbitrators exceeded their powers when they awarded Aguilera $100,000 in punitive damages.

{9} Palm Harbor relies on *Shaw v. Kuhnel & Assocs., Inc.*, 102 N.M. 607, 608–09, 698 P.2d 880, 881–82 (1985) to support its contention that arbitrators in New Mexico have no authority to award punitive damages. In *Shaw*, our Supreme Court held that the defendants in that case could not compel the plaintiffs to arbitrate their claims because the defendants were Texas corporations who were not authorized to do business, or to file suit, in New Mexico. *Id.* at 608, 698 P.2d at 882. The Court also stated that claims of fraud in the inducement and punitive damages were not "arbitrable under the language of the contract as written in this case." *Id.* The Court stated that because fraud in the inducement is a legal ground for revoking an arbitration agreement, such a claim cannot

be resolved pursuant to that agreement. The Court then cited to *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793, 796–97 (1976) for the principle that the power to award punitive damages is reserved to the courts and should not be given to an arbitrator. *Shaw*, 102 N.M. at 609, 698 P.2d at 882.

{10} Aguilera responds that Palm Harbor's reliance on *Shaw* is not well founded. She argues that the statement in *Shaw* is not controlling and that our Supreme Court acknowledged as much in *Stewart v. State Farm Mut. Auto. Ins. Co.*, 104 N.M. 744, 747, 726 P.2d 1374, 1377 (1986). In *Stewart*, the Court upheld the arbitration panel's authority to make findings on the amount of punitive damages, but only within the amount permitted by the parties' contract. The Court observed that the arbitrators had not made an award of punitive damages "[u]ndoubtedly" because of the Court's statement in *Shaw*, but acknowledged that it was for the arbitrator and not the trial court to find the facts relevant to an award of punitive damages. *Stewart*, 104 N.M. at 747, 726 P.2d at 1377.

{11} We question whether the *Shaw* court's statement made in 1986, that the power to award punitive damages is reserved to the courts, reflects the state of our law today. This Court recognizes that "we are bound by our Supreme Court's precedents." *State ex rel. Martinez v. City of Las Vegas*, 118 N.M. 257, 259, 880 P.2d 868, 870 (Ct.App. 1994), *cert. granted*, 118 N.M. 430, 882 P.2d 21 (1994). However, when we determine that our Supreme Court would conclude that the precedent is no longer good law and would overrule it given the opportunity, we will decline to follow the precedent. *Id.*

{12} We have surveyed our case law since *Shaw*, and observe that it has been the practice for arbitrators to recommend an award of punitive damages and for the trial court to adopt the recommendation. It has not been our practice to require a separate trial on punitive damages. For example, in *Stinbrink v. Farmers Ins. Co.*, 111 N.M. 179, 182, 803 P.2d 664, 667 (1990), our Supreme Court reversed the confirmation of an arbitration award that required a sharing of costs and

found punitive damages were warranted, but precluded by the terms of the insurance policy and remanded the case to the district court. The Court did not specifically articulate whether this issue should be remanded to the arbitrators, but observed that the arbitrators had already found that punitive damages should be awarded. Furthermore, in *United Tech. & Res., Inc. v. Dar Al Islam,* 115 N.M. 1, 5, 846 P.2d 307, 311 (1993), the Court affirmed the trial court's adoption of the arbitrators' recommendation denying punitive damages, even though the plaintiffs demanded a jury trial on the issue. From these cases, we conclude that the trial court does not reserve to itself a fact-finding role in determining whether to award punitive damages.

{13} Our research further reveals that *Garrity* has not been followed by the majority of jurisdictions that have considered the issue. *See generally* Timothy E. Travers, *Arbitrator's Power to Award Punitive Damages,* 83 A.L.R.3d 1037 (1978 & Supp.2000). Following the *Garrity* decision, many employment and brokerage contracts, requiring that disputes be resolved through binding arbitration, began to include a New York choice-of-law clause. *See* Lorenzo Marinuzzi, *Punitive Damages in Arbitration: the Debate Continues,* 52 SUM Disp. Resol. J. 67, 70 (1997). And thus, in 1995, the United States Supreme Court took the opportunity to resolve a split in the circuits on whether arbitrators of Federal Arbitration Act claims could entertain and award punitive damages when such a choice-of-law provision existed. *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). In that case, the Supreme Court held that a contract between a securities brokerage firm and its customers (arbitrated under the Federal Arbitration Act which authorizes punitive damages) allowed the arbitration panel to award punitive damages despite a choice-of-law provision, which the Court read as controlling only "New York's substantive rights and obligations, and not the State's allocation of power between alternative tribunals." *Id.* at 60, 115 S.Ct. 1212.

{14} Those jurisdictions which hold that arbitrators have no authority to award punitive damages have not based their rulings on exactly the same rationale as that set forth in *Garrity.* While New York reasoned that it was not appropriate for a private tribunal to punish, Indiana has held that arbitrators cannot award punitive damages because arbitration arises out of contract, and punitive damages are not available in contract actions. *See United States Fid. & Guar. Co. v. De-Fluiter,* 456 N.E.2d 429, 432 (Ind.Ct.App. 1983). Based on similar reasoning, Arkansas has held that its law prohibits the arbitration of tort cases, for which punitive damages would be available, and thus punitive damages are not available for cases that can be arbitrated. *See McLeroy v. Waller,* 21 Ark. App. 292, 731 S.W.2d 789 (1987). Neither of these rationales further the policies of our state.

■ {15} First, in New Mexico, punitive damages are allowed in contract cases "on a showing of bad faith, or at least a showing that the breaching party acted with reckless disregard for the interests of the nonbreaching party." *Paiz v. State Farm Fire & Cas. Co.,* 118 N.M. 203, 210, 880 P.2d 300, 307 (1994). Additionally, since the 1986 *Shaw* decision, our society has become increasingly dependent on alternative methods of resolving its disputes and has increasingly demanded such methods. The increasing demands upon the courts have, in turn, encouraged the use of arbitration. *See United Tech.,* 115 N.M. at 3, 846 P.2d at 309 (explaining that the process of arbitration aids in relieving the judiciary's heavily burdened caseload).

{16} Our research also persuades us that "despite its roots in private contract, arbitration has been called upon to function as a wide-ranging surrogate for the courtroom. Indeed, it has increasingly moved from the role of commercial court to that of a civil court of general jurisdiction." Thomas J. Stipanowich, *Punitive Damages and the Consumerization of Arbitration,* 92 N.W.U. L.Rev. 1, 8 (1997). Illustrating this trend to use arbitration to resolve disputes, the United States Supreme Court has recently extended the reach of the Federal Arbitration Act and ruled that employers can require the

arbitration of employment disputes, except for those involving transportation workers. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 1307, 149 L.Ed.2d 234 (2001).

{17} Moreover, *Garrity,* upon which our Supreme Court relied for the proposition that arbitrators had no authority to award punitive damages, was the product of a divided court and has been widely criticized. As one commentator has pointed out, "[t]he split in the *Garrity* court was essentially a battle of conflicting perspectives over the fundamental nature of arbitration." Stipanowich, *supra,* at 12. The majority view was that a private remedy for a private dispute should not, for public policy reasons, be permitted to punish to deter bad behavior, that is, act in a public role. *See Garrity,* 386 N.Y.S.2d 831, 353 N.E.2d at 795. The dissenting view, on the other hand, focused on the growing role and broadening scope of arbitration to resolve disputes. *Id.* 386 N.Y.S.2d 831, 353 N.E.2d at 798–801.

{18} Since *Garrity,* many other jurisdictions have allowed punitive damages to be awarded in arbitration. Some jurisdictions permit arbitrators to award punitive damages only when they are expressly authorized by the contract. *See Edward Elec. Co. v. Automation, Inc.,* 229 Ill.App.3d 89, 171 Ill.Dec. 13, 593 N.E.2d 833, 843 (1992) (determining arbitrators could award punitive damages, so long as there was an express provision in the agreement authorizing such relief). *Complete Interiors, Inc. v. Behan,* 558 So.2d 48 (Fla.Ct.App.1990) (holding arbitrators exceeded their power when they awarded punitive damages absent an express provision authorizing them).

{19} The federal courts, applying the Federal Arbitration Act, take the view that arbitration panels are empowered to award punitive damages unless the arbitration agreement states otherwise. *See Raytheon Co. v. Automated Bus. Sys., Inc.,* 882 F.2d 6, 10 (1st Cir.1989) (stating arbitrators should have the same authority as courts to award punitive damages for certain claims); *Willoughby Roofing & Supply Co. v. Kajima Int'l, Inc.,* 598 F.Supp. 353, 361 (N.D.Ala.1984) (*aff'd,* 776 F.2d 269 (11th Cir.

1985) (determining that "there is no public policy bar which prevents arbitrators from considering claims for punitive damages" and quoting *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)) for the proposition that "the arbitration process can be a viable method of dispute resolution only if 'it serves as a vehicle for handling any and all disputes that arise under the agreement' " and the arbitrators are given flexibility to fashion appropriate remedies). As the *Willoughby* court pointed out, the practical effect of precluding arbitrators from awarding punitive damages is either that a plaintiff who submits to arbitration waives his right to punitive damages and thus "the public policies and purposes served by punitive damage awards" would be totally frustrated or that, under the *Garrity* rule, the wasteful exercise of conducting a separate trial would be required. *Willoughby,* 598 F.Supp. at 363–64.

{20} Following the federal courts, some states have held that arbitration awards of punitive damages should be upheld when permitted by law and the arbitration agreement. In *Russell v. Kerley,* 159 Or.App. 647, 978 P.2d 446, 449 (1999), for example, the Oregon Court of Appeals upheld an arbitration award and held that "an arbitrator may award punitive damages if the arbitration agreement permits such an award and if such damages are otherwise recoverable on the underlying claim." The court noted that, even though Oregon's arbitration statutes are based on New York law, it was not bound by New York law, observing that the rule in *Garrity* had recently been limited by federal law. *Id.* Maryland has also held that punitive damages can be awarded unless the arbitration agreement specifically precludes such an award. *Regina Constr. Corp. v. Envirmech Contracting Corp.,* 80 Md.App. 662, 565 A.2d 693, 699 (1989).

{21} North Carolina has held that claims for punitive damages, which fall within the scope of a broadly written arbitration agreement, were not barred by any public policy. *Rodgers Builders, Inc. v. McQueen,* 76 N.C.App. 16, 331 S.E.2d 726, 734 (1985). Interpreting broad contract language encom-

passing an agreement to arbitrate "a dispute that arises among the parties," Texas has upheld an arbitration award of punitive damages, noting that no Texas court had ever set aside a punitive damages award of an arbitrator. *Kline v. O'Quinn,* 874 S.W.2d 776, 782–84 (Tx.Ct.App.1994). Recently, in affirming an arbitration award of treble statutory damages—awarded pursuant to a broadly written arbitration clause that agreed to settle any controversy or claim by arbitration—the Appeals Court of Massachusetts sided with those jurisdictions that permit arbitrators to award punitive damages and held that the "balance of policy considerations" weighed in favor of permitting arbitrators to award punitive damages, in the interests of "speedy and economic resolution of commercial disputes." *Drywall Sys., Inc. v. ZVI Constr. Co.,* 51 Mass.App.Ct. 353, 747 N.E.2d 168 (2001).

{22} Still other jurisdictions, recognizing that arbitration functions as a substitute for court proceedings, have simply ruled that when punitive damages may be asserted in a court of law, they may also be awarded in arbitration proceedings. In *Baker v. Sadick,* 162 Cal.App.3d 618, 208 Cal.Rptr. 676, 680–81 (1984), the California Court of Appeals stated that "[i]t strains legal imagination to conclude an agreement to substitute arbitration for litigation results ipso facto in forebearance of a claim which would support an award of punitive damages." *Id.* at 684. In *Faiyaz v. Dicus,* 245 Ga.App. 55, 537 S.E.2d 203, 206 (2000), the Georgia Court of Appeals ruled that an arbitration panel did not exceed its authority in awarding punitive damages when it found that an agreement had been fraudulently and intentionally breached.

■ {23} Times have changed, significantly, since *Shaw.* Given the increasing importance of methods of alternative dispute resolution in the functioning of an overburdened court system, and New Mexico's strong public policy favoring the resolution of disputes through arbitration and other alternative means, we hold that arbitrators are authorized to award punitive damages when such damages are permitted by law and supported by the facts. In so holding, we are mindful of Palm Harbor's concerns expressed at oral argument, that arbitrators could make unreasonably large awards that would be unreviewable by the district court. Palm Harbor correctly points out that, in general, "the district court does not have the authority to review arbitration awards for errors as to the law or the facts; if the award is fairly and honestly made and if it is within the scope of the submission." *Fernandez,* 115 N.M. at 625–26, 857 P.2d at 25–26.

{24} In *Fernandez,* however, our Supreme Court recognized that "under appropriate circumstances the district court may find an arbitration panel's mistake of fact or law so gross as to imply misconduct, fraud, or lack of fair and impartial judgment, each of which is a valid ground for vacating an award." *Id.* at 626, 857 P.2d at 26. NMSA 1978, § 44–7–12(A) provides as follows:

A. Upon the application of a party, the court shall vacate an award where:

(1) the award was procured by corruption, fraud or other undue means;

(2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) the arbitrators exceeded their powers[.]

Accordingly, Section 44–7–12 provides for review of an award upon the motion of a party. *See Medina v. Found. Reserve Ins. Co.,* 1997–NMSC–027, ¶ 12, 123 N.M. 380, 940 P.2d 1175 (stating that "[i]n evaluating the propriety of an arbitration award, the reviewing court will conduct an evidentiary hearing and enter findings of fact and conclusions of law upon any issue presented in the motion to vacate the award.").

■ {25} Moreover, when punitive damages awards are "grossly excessive" in relation to the legitimate interests of the state in imposing punitive damages, such an award enters the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment. *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (*cited in Allsup's Convenience Stores, Inc. v. N. River Ins. Co.,* 1999–NMSC–006, ¶ 47, 127 N.M. 1, 976 P.2d 1). Under such circumstances, an arbitration

award would be reviewable under Section 44–7–12 as demonstrating a lack of fair and impartial judgment that implicates the Fourteenth Amendment. We doubt that unjustified awards will be common, however. *See* Stipanowich, *supra,* at 17–19 (discussing the relative conservatism of commercial arbitrators compared to juries when awarding punitive damages). We thus do not agree with Palm Harbor that our ruling today imposes upon a defendant the risk of an award of unchecked punitive damages.

{26} In the present case, the trial court reached the correct result even though it ruled that it would treat the Tribunal award of punitive damages as advisory and adopt it. *See State v. Torres,* 1999–NMSC–010, ¶ 22, 127 N.M. 20, 976 P.2d 20 (stating that appellate court "may affirm on grounds upon which the trial court did not rely unless those grounds depend on facts that [Appellant] did not have a fair opportunity to address in the proceedings below."). Accordingly, we need not address the remainder of Palm Harbor's arguments challenging an award of punitive damages by the district court. We therefore affirm the trial court's confirmation of the arbitration award in full.

II. *The Additional Award of Attorney's Fees*

{27} Palm Harbor also appeals the district court's January 5, 2000 award of additional fees under UPA, NMSA § 57–12–10(C) (1987), for the work done during the time the case was appealed to the district court. In her answer brief, Aguilera states that she "agrees Palm Harbor's second appeal is well taken and Appellee does not contend otherwise." Aguilera then states that she does not oppose Palm Harbor's appeal. This concession was also repeated at oral argument. Consequently, because Aguilera has informed us that she is giving up her claim for the attorney's fees awarded by the district court, we remand for the district court to vacate its order awarding attorney's fees. We make no ruling on the merits of this issue and our action should not be construed as such.

## CONCLUSION

{28} Because we hold that it is within the authority of an arbitrator to award punitive damages when permitted by law and supported by the facts, we affirm the arbitration award in full. We also remand the order awarding additional attorney's fees to the district court with instructions to vacate that order.

{29} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, Judge, and IRA S. ROBINSON, Judge.